**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FIDELITY BROKERAGE SERVICES LLC,

        Plaintiff,

    v.

MARSHALL CARO, WALTER RAQUET,
INDII.COM USE LLC, AND BILL ROTHFARB,

        Defendants.

10 CIV 5893   (BSJ)

**AFFIDAVIT OF MICHAEL G.
SHANNON IN FURTHER SUPPORT
OF FIDELITY'S MOTION FOR
INTERPLEADER AND RELATED
RELIEF AND IN OPPOSITION TO
CARO DEFENDANTS' MOTION TO
DISMISS**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK  )

       MICHAEL G. SHANNON, being duly sworn, deposes and says:

       1.     I am attorney admitted to practice before this Court and a partner of the law firm

Thompson Hine LLP, counsel for plaintiff Fidelity Brokerage Services LLC ("Fidelity").  I am

familiar with the circumstances and proceedings relating to this Interpleader Action, and I submit

this Affidavit in further support of Fidelity's Motion for Interpleader and Related Relief and in

opposition to defendants Marshall Caro ("Caro") and Indii.com USE LLC's ("Indii.com") Motion

to Dismiss.

       2.     A copy of the transcript of the August 26, 2010, hearing held before Hon. Judith

Gische, Justice of the New York State Supreme Court, New York County, in *Rothfarb v.*

*Programit, Inc. et. al.*, Index No. 019178/87, is annexed hereto as Exhibit 1.

       3.     A copy of the transcript of the October 5, 2010 telephonic hearing, held before

Hon. Barbara S. Jones, District Judge, in this case is annexed hereto as Exhibit 2.

       4.     I have personally reviewed monthly account statements reflecting the activity in

the Indii Account and Caro's personal account (#0020) at Fidelity in early 2010 including the

196826.2

statements for February, March, and April 2010.  Those statements reflect transfers of nearly all of Caro's personal holdings into the Indii Account and that these transfers comprise nearly all of the assets in the Indii Account.

5.       Due to privacy concerns, it is Fidelity's practice to not disclose its clients transactions absent a subpoena, a discovery obligation or other lawful process.  Therefore, I am not attaching the statements here nor have they been produced to the parties or their counsel, but will certainly make them available as the Court may direct (or upon the consent of Caro and Indii.com to the disclosure of their statements to the other parties).

6.       A copy of portions of a transcript of the deposition of Caro conducted on November 25, 2008, in *Estate of Elizabeth Anne Caro*, is annexed hereto as <u>Exhibit 3</u>.  The transcript references Knight Securities which from a search of FINRA and New York State Department of State records does not appear to be a New York entity.

7.       I am informed that Fidelity Global Brokerage Group, Inc. is the sole member of plaintiff Fidelity Brokerage Services LLC and that Fidelity Global Brokerage Group, Inc. is incorporated and has its principal place of business in Massachusetts.  A copy of Fidelity Global Brokerage Group, Inc.'s corporate status summary from the Secretary of the Commonwealth of Massachusetts, Corporations Division's website is annexed as <u>Exhibit 4</u>.

_____
Michael G. Shannon

Sworn to before me this
8th day of November, 2010.

_____
Notary Public

MAXINE V. LOTHIAN
Notary Public State of New York
No. 03-4989952
Qualified in Bronx County
Certificate Filed in New York County
Commission Expire Dec. 23, 2013

2

# Exhibit 1

```
 1

 2    SUPREME COURT OF THE STATE OF NEW YORK

 3    NEW YORK COUNTY: CIVIL TERM:   PART 10

 4    ----------------------------------------------X

 5    BILL ROTHFARB,

 6                          Plaintiff,

 7                                        Index No.
                                          019178/87
 8          - against-

 9    PROGRMIT, INC., MARSHALL CARO, et al

10                           ,

11                       Defendants.
      ----------------------------------------------X
12                      60 Centre Street
                        New York, New York  10007
13                      August 26, 2010

14
                        B E F O R E:
15
                      HONORABLE JUDITH GISCHE,
16                         Justice

17    A P P E A R A N C E S:

18          ROTHFARB LAW, PLLC
            Attorneys for Plaintiff
19          11 Broadway - Suite 615
            New York, New York  10004
20          BY:  EVAN S. ROTHFARB, ESQ.

21          THOMPSON HINE, LLP
            Attorneys for Fidelity Brokerage
22          335 Madison Avenue - 12th Floor
            New York, New York  10017
23          BY:  MICHAEL G. SHANNON, ESQ.

24           DONNA DRUMM., ESQ.
            Attorneys for Marshall Caro
25          P.O. Box 11158
            Greenwich, CT  06831
26          BY:  DONNA DRUMM, ESQ.
```

```
 1                        Proceedings

 2                      ROBERT CHODOS
                     Official Court Reporter
 3

 4

 5

 6            THE COURT:  We're on the record in the

 7     case of Rothfarb against Programit.

 8            Appearances.

 9            MR. ROTHFARB:  Rothfarb Law, PLLC, 11

10     Broadway, Suite 615, New York  10004, by Evan Rothfarb

11     for Plaintiff Bill Rothfarb.

12            THE COURT:  Relationship.

13            MR. ROTHFARB:  He is my father, your Honor.

14            THE COURT:  Okay.

15            MS. MORRISON:  Lori Morrison.

16            MR. SHANNON:  Michael Shannon of Thompson Hine

17     representing Fidelity Brokerage.

18            THE COURT:  Your name again.

19            MR. SHANNON:  Michael Shannon.

20            MS. DRUMM:  Donna Drumm representing Marshall

21     Caro.

22            THE COURT:  Let me just start off by saying

23     that when I originally spoke to you folks off the

24     record Mr. Shannon indicated to me that he had reached

25     a stipulation with the Plaintiff.  I believe you are

26     just a stakeholder here.  I did get papers from you.
```

3

Proceedings

1
2      Do I have a copy of that stipulation?

3      Do I need to consider your papers?

4      What is the status of that before I get onto

5  the real dispute here?

6      MR. SHANNON:  Yes, your Honor.

7      We have a stipulation that I would like to

8  hand up.  It is only between Fidelity and Plaintiff.

9  It begins with the Plaintiff's withdrawal of a motion

10 for contempt, sanctions, fine, or attorney fees and to

11 compel against Fidelity.

12     THE COURT:  Okay.

13     That is pretty important.

14     MR. SHANNON:  Also, what to do about

15 continuing the restraint.  We disclosed the existence

16 of four brokerage accounts and papers back and forth.

17 I think there is Agreement between the competing

18 parties that three of those accounts in the name of Mr.

19 Caro individually should be -- should be free from any

20 restraint.  There is a dispute as to an account known

21 as the Indii account.

22     THE COURT:  Indii account?

23     MR. SHANNON:  We have commenced an action in

24 the Federal Court and for interpleader.  I believe

25 Plaintiff is consenting to proceed in that.

26     The one issue for your Honor as it effects

Proceedings

1
2  Fidelity is what to do about continuing or not
3  continuing the restraint on the Indii account.
4        Fidelity is not objecting to whatever ruling
5  your Honor makes on it.  We have a proposed stipulation
6  and Order which would address all of these things I
7  just described plus my consent to receive some
8  Discovery.
9        THE COURT:  One question I have and then I'll
10  let everybody address this.  To the extent interpleader
11  is filed, wouldn't that arrest me of jurisdiction of
12  this particular dispute?  The money is going to go
13  in -- you're going to put it in the Federal Court.  I'm
14  assuming you are doing that because you're not even, in
15  a way you're not subject to my jurisdiction.  Aren't
16  you out of state?
17        MR. SHANNON:  Yes.
18        The Order we propose would provide for
19  continuation of restraint until the Federal Judge
20  decided what to do with it.  So, that is what they're
21  asking for.  I assume that Indii would prefer your
22  Honor not to --
23        MS. DRUMM:  Yes.
24        MR. SHANNON:  I would like to tender this
25  relation.  If your Honor ordered it, you do -- if you
26  modify it --

5

1              Proceedings

2              THE COURT:  It is signed by the parties.

3              MR. SHANNON:  Signed by Plaintiff and by

4      Fidelity.

5              THE COURT:  And not by Caro?

6              MR. SHANNON:  Yes.

7              THE COURT:  So, let me start with you.

8              Do you agree with Mr. Shannon's assessment

9      that is all that is left in this action?

10             MR. ROTHFARB:  Yes.

11             THE COURT:  Continuation of restraint until,

12     in fact, you get this into Federal Court?

13             MR. ROTHFARB:  It's really continuation of

14     injunction.  Restraint.  As we get into argument there

15     is questionable status whether it's valid because of

16     the automatic operation of law.  We will get into this

17     in argument.

18             THE COURT:  Well, that is important to me.

19     The Temporary Restraining Order that I issued was based

20     upon the valid service of an Order restraining the

21     account.  In absence of that why would I mess around

22     with this?

23             MR. ROTHFARB:  We believe we have set forth --

24     if your Honor recalled in our Order to Show Cause, we

25     had complained that Fidelity had not complied with an

26     information subpoena.  Fidelity during the course after

1       Proceedings

2    one was signed served a supplemental information

3    subpoena.  That was served after exception notice was

4    filed.  At this point, we now have sufficient indica of

5    fraudulent conveyance.

6         THE COURT:  Why can't you serve another notice

7    which would serve --

8         MR. ROTHFARB:  A restraining notice?

9         THE COURT:  Yes.

10        Why involve me if you are going into Federal

11   Court?  On some level the way you invoke my

12   jurisdiction, you used process of law you were claiming

13   was not complied with.

14        MR. ROTHFARB:  That is right.  At that time --

15        THE COURT:  I am not sure, you know, in the

16   absence of you exercising something appropriate against

17   Mr. Caro's account, what would give me other than you

18   may want me to, what gives the legal nexus to otherwise

19   continue restraint on that account?

20        MR. ROTHFARB:  As I said, we believe we have

21   sufficient ground at this point or preliminary

22   injunction based on the facts which have come out.

23        THE COURT:  You don't get a preliminary

24   injunction unless you're looking for permanent

25   injunction or something else in this Court.  If you are

26   telling me you are going to Federal Court, I say okay,

Proceedings

1

2   fine, you know, whatever a Federal Judge does they do.

3   You cannot use me as a Band Aid until you get there.

4          MR. ROTHFARB:   Your Honor --

5          THE COURT:   I mean unless you have law that

6   tells me you can use me as a Band Aid, don't you have

7   to run to Federal Court and ask them for some kind of

8   preliminary relief, serve restraining notices, or what

9   you can do now now that you got the information from

10  Fidelity, I am done, aren't I?

11         MR. ROTHFARB:   Your Honor, in the interest of

12  expediting, we believe we come to you and ask for

13  preliminary relief because it is easier administration

14  of the relief.

15         THE COURT:   But, I don't understand.   Easy,

16  that is great, I am not about easy, I am about due

17  process.   You tell me judicially why I can do what

18  you're asking me to do then I say okay, I'll consider

19  it.   If I have no jurisdiction, if it's easier or not

20  is of no concern to me.

21         MR. ROTHFARB:   We're willing to invoke legal

22  process separate and apart from your Order and serve a

23  second restraint which they agreed to accept right now

24  by stipulation.

25         THE COURT:   If you do that then you're done

26  here, right?

8

Proceedings

1

2          MR. ROTHFARB:  Yes.

3          MS. DRUMM:  Your Honor, we have procedural and

4     due process objections to the restraining order.  We

5     would again process -- if you start the process all

6     over again --

7          THE COURT:  You start all over again.

8          Now, they will serve you with restraining

9     notice.  It's right or wrong.  The Federal or State

10    Judge who gets it will figure it out.  Now, best I can

11    tell, right, is the -- the problem is the information

12    subpoena, you got the information, you narrowed it

13    down, Fidelity is out of the situation.  You don't have

14    anything you served on Caro's account yet.  Right?

15         MR. ROTHFARB:  Original restraining notice.

16         THE COURT:  On that account.

17         MR. ROTHFARB:  It applied to all accounts in

18    which it appeared.

19         THE COURT:  You told me that it is expiring.

20         MR. ROTHFARB:  It became a legal melody.

21         THE COURT:  Okay.

22         I cannot enforce a legal melody.  I will not

23    hold your place until you serve a proper restraining

24    notice.  They will take it on its face or not.  You

25    will support it in Court, in Federal Court or State

26    Court or not, but I am scratching my head about what is

Proceedings

1

2  left in front of me, and with all due respect I don't

3  buy it because it's easier argument.  I want to know

4  what is my jurisdiction up here.

5         MR. ROTHFARB:  Regarding that the Courts are

6  empowered under Article II to maintain post- judgment

7  proceedings particularly with regard to fraudulent

8  conveyance.

9         THE COURT:  But you're not going to proceed on

10  that, or are you?  You're going to proceed in State

11  Court or not?

12         MR. ROTHFARB:  Your Honor, we are proceeding

13  on multiple fronts.  Interpleader is with regard to the

14  Indii account specifically.  We may prevail or not.

15  Our right against debtor is far beyond interpleader.

16         THE COURT:  You don't have an enforcement

17  proceeding now except to the extent you did not get

18  information on the information subpoena.  Correct?

19         MR. ROTHFARB:  That is correct.

20         THE COURT:  So you can start something new, I

21  guess.  I am not about to continue the restraint based

22  upon how it has been represented to me.  Quite frankly

23  it sounds like the stipulation resolves this case

24  period.  Right?

25         MR. ROTHFARB:  Pretty much except for

26  injunctive relief which you are not inclined to grant.

1                          Proceedings

2          THE COURT:  I will not grant preliminary

3    injunctive relief for something which I do not have

4    anything to grant permanent injunctive relief.  You

5    don't have a proceeding for that right now.  Maybe you

6    will.  Maybe you won't.  I don't know.  Maybe you will

7    go to Federal Court.  It sounds like interpleader will

8    be commenced and the money will be in that Court.  You

9    may have to run around and get your restraint served

10   immediately.

11         MR. ROTHFARB:  As part of the stipulation your

12   Honor, Fidelity has agreed to move to deposit the funds

13   in the interpleader.

14         MR. SHANNON:  Your Honor, I appreciate the

15   Court's comment about Band Aid.  When I walk out of

16   here I am sure that the client's question is, what is

17   restrained, if anything, and I think the only thing

18   that is open is the Indii account.

19         THE COURT:  Right.

20         MR. SHANNON:  If the Temporary Restraining

21   Order -- originally we had a restraining notice.  There

22   were exceptions filed to it which could cause it to

23   laps.  If there were no objection, none were filed, we

24   had your Honor's restraining notice which brings us to

25   today.

26         THE COURT:  Right.

1           Proceedings

2           MR. SHANNON:  We have already filed.   We

3     already filed the interpleader.  We have not moved to

4     deposit the assets so this potential gap maybe hours

5     between the service of a new restraint or the

6     continuation of your Honor's Order and the expiration

7     of the existing restraint.

8           THE COURT:  What is my jurisdiction other than

9     the fact -- I understand the problem.  It's not that I

10    don't understand the problem, and quite frankly I am

11    sure Miss Drumm, if I lift the restraint, she will make

12    a phone call and take that money out.  Right?

13          Where is the restraint?  Now you know, Mr.

14    Rothfarb.  Where is the restraint now you will serve it

15    on them?

16          MR. ROTHFARB:  In my bag, your Honor.

17          THE COURT:  Serve it on them and we're done.

18    I don't see the jurisdiction for me.  I think it's

19    really in your ball park now.

20          MS. DRUMM:  May I be heard?

21          THE COURT:  Yes.

22          MS. DRUMM:  Our main contention is

23    procedurally our exceptions were served.  We feel the

24    restraint should be -- Indii is not the proper party.

25    Mr. Caro is not a party.

26          THE COURT:  I think that will probably be

1                            Proceedings

2    resolved, too.  I don't want to say to everybody's

3    satisfaction.

4              MS. DRUMM:  Your Honor, I just wanted to state

5    my objection.

6              THE COURT:  Of course.

7              MR. SHANNON:  I ask the Court to accept the

8    stipulation.

9              THE COURT:  I will.

10             MR. SHANNON:  That is --

11             MS. DRUMM:  Note my objection as to Indii.  I

12   just want my objection noted.

13             THE COURT:  Okay.

14             That resolves what is in front of me.  I will

15   otherwise so order it.

16             I will otherwise resolve the emergency Order

17   to Show Cause and Temporary Restraining Order in front

18   of me by otherwise determining them resolved as to

19   Fidelity with respect to the stipulation and the matter

20   otherwise moot by virtue of the fact that there is

21   going to be a Federal interpleader and the restraint

22   that is involved lapse and new restraint will be

23   served.

24             Okay.

25             MR. SHANNON:  Thank you, your Honor.

26

1                          Proceedings

2                 I DO HEREBY CERTIFY that the

3      foregoing, is a true and accurate transcription of the

4      original stenographic notes.

5                               Robert E. Chodos,
                                Senior Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# Exhibit 2

```
 1      0a5dfidc

 2      UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
 3      ------------------------------x

 4      FIDELITY BROKERAGE SERVICES
        LLC,
 5
                         Plaintiff,              New York, N.Y.
 6
                  v.                             10 Civ. 5893 (BSJ)
 7
        MARSHALL CARO, WALTER RAQUET,
 8      INDII.COM USE, LLC, and BILL
        ROTHFARB,
 9
                         Defendants.
10
        ------------------------------x
11
                                                 October 5, 2010
12                                               2:01 p.m.

13      Before:

14                       HON. BARBARA S. JONES,

15                                               District Judge

16                           APPEARANCES

17      THOMPSON HINE LLP
             Attorneys for Plaintiff
18      BY:  MICHAEL G. SHANNON
             MICHAEL D. HOENIG
19
        THE LAW OFFICE OF SHELDON EISENBERGER
20           Attorneys for Defendants Marshall Caro
             and Indii.Com Use LLC
21      BY:  SHELDON EISENBERGER
             ELLIOT HAHN
22
        CUMMINGS & LOCKWOOD, LLC
23           Attorneys for Defendant Walter Raquet
        BY:  MICHAEL P. KAELIN
24

25
```

1

```
1    0a5dfidc

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------x

4    FIDELITY BROKERAGE SERVICES
     LLC,
5
                    Plaintiff,              New York, N.Y.
6
          v.                                10 Civ. 5893 (BSJ)
7
     MARSHALL CARO, WALTER RAQUET,
8    INDII.COM USE, LLC, and BILL
     ROTHFARB,
9
                    Defendants.
10
     ------------------------------x
11
                                            October 5, 2010
12                                          2:01 p.m.

13   Before:

14                   HON. BARBARA S. JONES,

15                                          District Judge

16                        APPEARANCES

17   THOMPSON HINE LLP
          Attorneys for Plaintiff
18   BY:  MICHAEL G. SHANNON
          MICHAEL D. HOENIG
19
     THE LAW OFFICE OF SHELDON EISENBERGER
20        Attorneys for Defendants Marshall Caro
          and Indii.Com Use LLC
21   BY:  SHELDON EISENBERGER
          ELLIOT HAHN
22
     CUMMINGS & LOCKWOOD, LLC
23        Attorneys for Defendant Walter Raquet
     BY:  MICHAEL P. KAELIN
24

25
```

SPEAKERPHONE CONFERENCE

1                    APPEARANCES CONTINUED

2    ROTHFARB LAW, PLLC
          Attorneys for Defendant Bill Rothfarb
3    BY:   EVAN S. ROTHFARB

4                          oOo

5            (In Chambers)

6            (Call connected)

7            THE COURT:  Good afternoon.  This is Judge Jones.

8            A VOICE:  Hello, Judge Jones.  I'm with the Conference

9    Center.  I'll join you to the Fidelity conference call right

10   away.

11           THE COURT:  All right.  Thank you.

12           Gentlemen, is everyone on the conference call now?

13           ALL COUNSEL:  Yes, your Honor.

14           THE COURT:  All right.  I wonder if you would do this

15   for me.  I have a reporter here, and I would like each counsel

16   who intends to speak to identify themselves.

17           And why don't we start with plaintiff, Fidelity

18   Brokerage Services.

19           MR. SHANNON:  Yes.  Good afternoon, your Honor.  My

20   name is Michael Shannon, of the Thompson Hine firm.  And just

21   so everyone is aware, my associate Michael Hoenig is in the

22   room with me.

23           THE COURT:  All right.  Thank you, Mr. Shannon.

24           And for Mr. Caro?

25           MR. EISENBERGER:  Yes.  Good afternoon, your Honor.

SPEAKERPHONE CONFERENCE

1  Sheldon Eisenberger, of the Law Office of Sheldon Eisenberger,

2  and with me is an associate, Elliot Hahn.  I'll be representing

3  Mr. Caro as well as Indii.Com.

4          THE COURT:  And you will be representing both Mr. Caro

5  and Indii.Com.?

6          MR. EISENBERGER:  That's right, your Honor.

7          THE COURT:  And for Mr. Rothfarb?

8          MR. ROTHFARB:  Good afternoon, your Honor.  This is

9  Evan Rothfarb, of Rothfarb Law, PLLC.  I'm representing Bill

10 Rothfarb.

11         THE COURT:  OK.  Thank you.

12         And is Mr. -- is it Raquet (Ra-kay) or (Racket)?

13         MR. KAELIN:  It's Raquet (Ra-kay), and I'm his

14 attorney, Michael Kaelin.

15         THE COURT:  How do you spell that?

16         MR. KAELIN:  It's K-A-E-L-I-N, first name Michael.

17         THE COURT:  OK.

18         MR. KAELIN:  And I notice in looking at the docket

19 sheet there is old information about my law firm.  It says

20 Gregory and Adams, P.C.  I'm now with Cummings & Lockwood, LLC,

21 and I will correct that with the court's office.

22         THE COURT:  All right.  I appreciate that.

23         All right.  I would like to hear first from you,

24 Mr. Eisenberger, with respect to the order to show cause and,

25 most particularly, with respect to the question of

4

SPEAKERPHONE CONFERENCE

1    jurisdiction.   So why don't you go ahead.

2            MR. EISENBERGER:   Thank you, your Honor.

3            As we state in our papers, Fidelity do not have

4    diversity on the basis of the fact that there are members of

5    the Indii LLC that are New York members.   There is -- we have

6    attached and we had provided the Court with a copy of our -- of

7    the operating agreement.   And the operating agreement,

8    specifically the schedule attaching the strategic members,

9    Schedule 3, in addition to Mr. Raquet and Mr. Caro, you have a

10   list of entities from Bank of America going to UBS.

11           The plaintiff had the requirement to state

12   unequivocally that they've made a determination that there is

13   no members that would in any way -- that the diversity would

14   exist and that the members of the Indii do not break the

15   diversity when, in fact, there are members who do, who are New

16   York partnerships or New York individuals.   We looked to the

17   LLC directly, and any one member that is a New York individual

18   or New York entity would automatically break the diversity.

19           THE COURT:   OK.   I have two questions,

20   Mr. Eisenberger.   Which entities or which other individuals who

21   are part of this LLC are New York citizens?

22           MR. EISENBERGER:   I believe you've got Citibank.

23   You've got members of Lehman Brothers.   There is Morgan

24   Stanley, Merrill Lynch.   These entities itself have New York

25   members, are New York entities.

SPEAKERPHONE CONFERENCE

1    There are others, as well, which we have been unable,

2    I could disclose to the Court, as to whether they are or they

3    aren't.  For instance, there are Credit Suisse First Boston; we

4    have not determined whether in fact any of those members of

5    Credit Suisse or its entity itself could be construed as a New

6    York member.  But we believe Lehman Brothers, we believe

7    Citibank, and definitely Morgan Stanley would qualify as being

8    New York entities.

9    THE COURT:  And they are members of the LLC?

10    MR. EISENBERGER:  They are strategic members, yes,

11    your Honor.  In total, they have ownership interest that they

12    will be entitled to profit participation of Indii LLC.  They do

13    not participate in any of the losses under the operating

14    agreement but they do participate in the profits.

15    And, again, Fidelity had the requirement to plead

16    specifically that there are no New York members.  The fact of

17    the matter is that you look to the LLC's membership interests

18    to determine whether there is diversity or not.

19    THE COURT:  All right.  Mr. Shannon, what do you have

20    to say to that.

21    MR. SHANNON:  I have a couple of things to say, your

22    Honor.  Let me start by suggesting that even if the argument

23    were factually correct, it would not matter.  The complaint

24    here need only assert that there is minimal diversity.  Aside

25    from the arguments that are being made about Indii, there are

SPEAKERPHONE CONFERENCE

1  allegations in the complaint of minimal diversity, because

2  Rothfarb, one of the competing claimants, is alleged to be from

3  New York and Raquet is alleged to be from Florida.   That is

4  specifically alleged in paragraph 7 of the claim.   Raquet has

5  also filed an answer in which he asserts a claim of his

6  interest to his portion of the interpleaded funds.

7          In addition, we have alleged a claim of diversity

8  between Rothfarb and Caro in paragraph 6 of the complaint.   And

9  under the statute, we only need to show that a party may have a

10  claim.   And from the correspondence here, I believe it has been

11  asserted that all of them are contending to have claims.

12          Now, taking directly the allegations regarding Indii,

13  first, the argument being advanced right now differs

14  significantly from the memorandum which we received last night,

15  which stated at page 2:   "Several of these strategic members

16  listed in Schedule 3 later signed documents confirming their

17  membership in the company.   Upon information and belief,

18  several of these strategic members may be citizens of the State

19  of New York."

20          The papers submitted show that Indii was formed in

21  2003.   The account was not opened at Fidelity until 2010.

22  There is no factual showing made by Indii here -- and one would

23  think Indii and its president, Mr. Caro, would know who their

24  members are, especially in 2010 -- there is no allegation that

25  as of any time since the filing of this -- as of the time of

SPEAKERPHONE CONFERENCE

1   the filing of the complaint there was a single member who was

2   in fact a New York resident.

3           In addition, we call your Honor's attention -- and we

4   apologize that we only were alerted to this issue last night,

5   but there is case law suggesting that the view of residence for

6   subject matter jurisdiction is not as black and white as Indii

7   is arguing.  And we refer the Court to <u>Citigroup Global Markets</u>

8   <u>v. KLCC Investments</u>, 2007 WL 102128, Southern District 2007,

9   where at Footnote 4 the Court stated:  "KLCC is a limited

10  liability company organized and existing under the laws of New

11  York with its principal place of business in New York."

12          That footnote addressed the question of diversity of

13  citizenship for the interpleader requirements.  So we believe

14  that the case law is supportive of our position even if Indii

15  is considered to be the sole adverse claimant, which is not the

16  case.

17          THE COURT:  Well, now that I am interested in.  Why is

18  Indii not the sole adverse claimant?

19          MR. SHANNON:  Because the dispute also involves

20  Mr. Caro.  When Mr. Caro opened the account -- and, again, I go

21  back to the test of being made the -- or may have an interest.

22          THE COURT:  Right.

23          MR. SHANNON:  We have an account which was opened as

24  using a form of a partnership account, not as an LLC account.

25          THE COURT:  Right.

SPEAKERPHONE CONFERENCE

1          MR. SHANNON:  Mr. Caro signed that as the authorized

2     signer of the account and in the original LLC agreement that we

3     were given was listed as a 50 percent owner of it.

4          The restraints that we received under the New York law

5     go not only to the account of Indii, or the account of Caro,

6     but we are required to restrain assets in which the person had

7     an interest.  So the sole question of ownership, if you will,

8     was not the test on the restraint of that account.

9          In addition, Mr. Caro would appear to be situated in

10    the same way as Mr. Raquet in asserting an interest in the

11    assets, and we have not yet put together a brief but we do have

12    a case law for the proposition that one can look through to the

13    interests of the owners, including a case of Rubinbaum v.

14    Related Corporate Partners, 2001 Southern District, 154

15    F.Supp.2d 481, where you can look through to the claim of the

16    individual owners.

17         And we would like the opportunity, if the Court wishes

18    to consider this issue further, to submit a reply on the

19    subject of Indii for purposes of subject matter jurisdiction.

20    But, respectfully, I do go back to the fact of Caro and Raquet

21    as establishing it anyway.

22         THE COURT:  All right.  I would like a reply.  I only

23    reviewed the papers myself today, because, of course, they

24    weren't late but they didn't come in until yesterday.  So I

25    would like a reply.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

SPEAKERPHONE CONFERENCE

1        Mr. Eisenberger, aren't there more than -- aren't
2    there two, at least two diverse claimants here?
3        MR. EISENBERGER:  No.  The only diverse claimants that
4    you would have -- the only claimant, really -- is Indii.  You
5    have Fidelity is seeking or has restrained the account of
6    Indii.
7        Caro is not seeking anything, any return of any of his
8    funds.  He's acknowledged that, you know, if there is a
9    restraining order, they are entitled to the restraining order
10   against his personal account because the judgment is against
11   him individually, not against Indii.  So there is really --
12   Indii is the sole adverse claimant here.  Nobody else.  It's
13   Rothfarb seeking the funds from Indii's funds.  So, you know,
14   what Mr. Shannon had just stated I disagree with him.  There is
15   no other adverse claimant here other than Indii.
16       In addition to that, your Honor, in fact, there is a
17   statement that was made by Mr. Shannon with regard to a form
18   that was filled out.  It is my understanding -- I mean, this is
19   the first time I'm hearing this, but it is my understanding
20   that this was a specific form that was provided by Fidelity to
21   be filled out by Indii.  I don't know if they had any other
22   forms, whether they had any LLC forms.  But it's clear that
23   Fidelity knew that this was an LLC.  It is clear and they
24   address it, and the account is opened in the name of the LLC.
25   So I don't understand what the reference is being made to the

SPEAKERPHONE CONFERENCE

1    application or the form that was filled out that was a

2    partnership form.   That was the form that was provided to

3    Mr. Caro when they opened up the account, which, again,

4    Fidelity was well aware that it was an LLC.

5            With regard to the case that was just cited, I believe

6    that deals with a corporation and not with an LLC.  We had

7    provided your Honor in our papers a case.  We've also cited

8    from comedy and wait, Carmody-Waite 2d, New York Practice,

9    Section 64.336, 2010, which stated, "A judgment creditor may

10   not issue a restraining notice against property belonging to a

11   third party merely by claiming that the third party is an alter

12   ego of the judgment debtor, and then such a restraining notice

13   can only be issued after there has been a specific adjudication

14   of the third party's status as an alter ego."  And we cited a

15   case, a Southern District case, your Honor.

16           The point, the thrust of our papers, in addition to

17   other items that we raised, is that from inception this was an

18   Indii account, an LLC, independent, separate from Mr. Caro's

19   personal account, who is the sole judgment debtor in this

20   action.   That Indii is independent, and that Fidelity had no

21   right to withhold or to deposit into the court these funds.

22   There was no claim against Indii.  The claim is only against

23   Caro.

24           So that's why we are seeking the return of the funds,

25   that they should be redeposited into the Indii account, and the

SPEAKERPHONE CONFERENCE

1   lifting of the restraint and, of course, the withdrawal of the

2   interpleader.

3        We are also pointing out to the Court that the amount

4   that they withheld, which is close to $800,000, is almost twice

5   the amount that they were required to withhold.  The judgment

6   was for $200-some-odd-thousand with interest.  According to

7   Mr. Rothfarb, it has reached 400,000.  There is no basis for

8   them to withhold $800,000 of the Indii funds.

9        That is our position.

10        And, again, Indii is the sole adverse claimant.  You

11   could slice it any other way, just because Mr. Caro is a member

12   in Indii, in the LLC, that doesn't mean that Fidelity has a

13   right to restrain and Rothfarb has a right to attach those

14   funds.

15        THE COURT:  All right.  Mr. Kaelin.

16        MR. KAELIN:  I don't have anything to add to it.  We

17   don't take a position on it.

18        THE COURT:  Well, are you an adverse claimant or not?

19        MR. KAELIN:  No.  It is really a conditional claim.

20   If we got to the point where the Court was going to order a

21   distribution from the fund, then we were going to make a claim

22   to it, but we are not making a claim to it now.

23        MR. SHANNON:  Your Honor, this is Michael Shannon.

24   May I reply?

25        THE COURT:  Yes.

1          MR. SHANNON:  First, counsel is mistaken.  The case

2     that I cited to the Court, the Citigroup Global case was in

3     fact an LLC case and that's why I cited it.

4          THE COURT:  OK.

5          MR. SHANNON:  Secondly, in Exhibit F to my moving

6     affidavit is a letter of August 3 from Mr. Caro, which states,

7     in part:  "As I understand it, Fidelity created a problem by

8     confusing the partnership assets of Indii.Com. Use LLC and the

9     personal assets."

10          Fidelity, you know, takes no position on what they are

11     or how they own it.  We were subject to a restraint obtained by

12     Rothfarb against the Indii account, as well.  So there -- at

13     which Mr. Caro was asking that we not obey.

14          So I think the competing -- the question -- the claim

15     that we are facing, whether it's vexatious or frivolous, is for

16     the Court to decide.  The question that we are facing is

17     Mr. Rothfarb's additional assertion that aside from listing the

18     Indii account in his TRO, whether that contains assets of

19     Mr. Caro, so whether Mr. Caro purports to disclaim an interest

20     in the Indii account, the contest -- the merits are whether

21     it's his funds for which Rothfarb can execute.

22          It strikes us as artificial to suggest that Mr. Caro,

23     quote, may not have an interest, unquote, under the loose

24     statutory definition for interpleader.

25          Thank you

SPEAKERPHONE CONFERENCE

1      MR. EISENBERGER:   Your Honor.

2      THE COURT:   Yes.   Who is this?

3      MR. EISENBERGER:   This is Sheldon Eisenberger.

4   Just one brief statement.

5      THE COURT:   Go ahead.

6      MR. EISENBERGER:   I was waiting for us to get to that

7   specific issue, and that's where I believe procedurally and

8   legally Mr. Shannon is incorrect.

9      What Mr. Shannon is trying to do is he's trying to say

10   that there's a post-judgment attachment and that there may be

11   assets belonging to Mr. Caro, and, therefore, it is proper for

12   them to take the funds or to restrain these funds because they

13   may be his assets.   But that's not the procedure, Judge.

14      If there are assets, you've got to go into state

15   court.   You've got to determine what are the assets.   You've

16   got to then make a demand for the payment of those assets.

17   They do not restrain an operating account or an investment

18   account of the entity itself.   You put in a notice of restraint

19   that they are forbidden to distribute any funds to Mr. Caro, if

20   there are any to be distributed to him.   They might want to

21   foreclose on his ownership interest.   There is a procedure that

22   one has to follow by a judgment creditor.

23      But to have a restraint and then apply an improper

24   restraint -- because, again, the funds were in the name of

25   Indii, belonging to Indii -- you cannot then say, oh, these

SPEAKERPHONE CONFERENCE

1    might belong to the judgment debtor and these might have to be

2    attached or distributed in some way to the judgment creditor.

3    Therefore, I'm going to file an interpleader action.  That's

4    not how it is done, Judge.  And that is an improper use of the

5    interpleader -- use of an interpleader action

6              MR. SHANNON:  Your Honor, this is Michael Shannon.

7              Actually, the way we see it, the question of the

8    restraints and whether Fidelity was mistaken when it included

9    Indii on day one or whether the court -- the state court issued

10   a broad or a narrow TRO, etc., are actually irrelevant.  The

11   question for the interpleader can exist without any judgment

12   execution history at all.

13             And what we have here is a claim by Rothfarb saying

14   that he is entitled to those proceeds from the Indii account

15   because they're really Mr. Caro's.  That's what it boils down

16   to.  Whether or not there were any restraints before -- we're

17   not asking the Court to revisit the New York procedure.  We're

18   not getting involved in any execution.  We're looking at very

19   strongly worded letters from the competing interests for the

20   funds in that account.

21             MR. EISENBERGER:  The only difference is, Judge, is

22   that the initial action or the initial restraining order never

23   requested the funds of Indii; it requested Caro's funds.

24             The outgrowth of what took place subsequently was

25   because of an error by or improperly restraining or notifying

SPEAKERPHONE CONFERENCE

1    Mr. Rothfarb that they are restraining Indii's accounts as

2    well, that led to the subsequent action by Rothfarb.  This was

3    only precipitated by the improper restraint of the Indii

4    account in the first place.

5            And, again, it's clear what Mr. Shannon is saying.

6    He's saying I'm restraining it because there is a judgment

7    against Mr. Caro and these may be Mr. Caro's funds.  Well, this

8    is not the proper procedure by which to be able to get

9    Mr. Caro's funds if in fact they are in Indii's account.

10   That's not the way to do it.  And the interpleader action

11   cannot say Fidelity.  It's up to Rothfarb to do it properly and

12   without the assistance of Fidelity, and they both have

13   exposure.

14           Your Honor, there was one other -- we are supposed to

15   put in our answer on Wednesday.  May we have a slight extension

16   on that?

17           THE COURT:  Is that you, Mr. Eisenberger?

18           MR. EISENBERGER:  Yes, it is, your Honor.

19           THE COURT:  Sure.

20           MR. EISENBERGER:  Thank you.

21           THE COURT:  Can I hear from Mr. Rothfarb's attorney?

22           MR. ROTHFARB:  Yes, your Honor.

23           I would like to talk to a number of these issues, and

24   I will try to do so in an orderly fashion.

25           With regard to the subject matter jurisdiction with

SPEAKERPHONE CONFERENCE

1    the interpleader proceeding, it is very clear, under Second

2    Circuit law, determined at the time of the filing of the

3    complaint.  There is no real evidence that Fidelity has falsely

4    joined anybody in order to obtain subject matter jurisdiction.

5    That would be the sole basis.  In fact, Fidelity did the

6    reasonable thing.  It identified all potential claimants to the

7    interpleader funds, named them as defendants.

8           The fact that the Court may have parties to yet

9    dismiss that at the inception of the action would have resulted

10   in the loss of diversity is immaterial for the purposes of

11   obtaining subject matter jurisdiction.

12          Moreover, Mr. Caro is clearly a proper defendant

13   because he is an indispensable party in this action under

14   Federal Rule of Civil Procedure 19(a)(1).

15          Furthermore, even if subject matter jurisdiction under

16   statutory interpleader wasn't proper, there is still Rule 22

17   interpleader jurisdiction.

18          THE COURT:  Mr. Rothfarb, I don't know whether you are

19   too close to the phone or what, but we are having trouble

20   understanding you.  So please go a little more slowly.

21          MR. ROTHFARB:  OK.  I'll just pick up the line, Judge.

22          Is this better?

23          THE COURT:  Let's see.

24          MR. ROTHFARB:  OK.  Now, with respect to the Rule 22

25   interpleader, the Court may properly convert an action

SPEAKERPHONE CONFERENCE

1    commenced as a statutory interpleader into a rule interpleader.

2    See, for example, <u>Geler v. National Westminster Bank</u>, 763

3    F.Supp. 722 (SDNY 1991).

4           Now, Mr. Eisenberger has done a good job guessing what

5    Mr. Rothfarb's claims are and stating them, but Mr. Rothfarb

6    has not presided in this action yet.  Mr. Rothfarb's claims

7    include fraudulent conveyance under New York Debtor and

8    Creditor Law, 273-A and 276, which are respectively actual

9    constructive fraud.  On top of it, Mr. Rothfarb will be

10   asserting an alter ego claim.

11          Now, the very case cited but Mr. Eisenberger stands

12   for the proposition as follows.  A judgment creditor may

13   restrain the assets of a judgment debtor wherever those assets

14   may be.  The restraints were properly made in the New York

15   proceeding, but as Mr. Shannon said, they were relevant to this

16   proceeding.  The only relevancy is evidence of the competing

17   claims to the funds that constitute the stake, which now is

18   solely the Indii.Com. Use account.

19          THE COURT:  All right.

20          MR. ROTHFARB:  And, furthermore, the availability of

21   interpleader is not dependent on the merits of the claims

22   asserted against the stakeholder.  Dismissal of the

23   interpleader is only proper in the absence of good faith by the

24   stakeholder.

25          THE COURT:  All right.  What about this question of

SPEAKERPHONE CONFERENCE

1   400,000 due and owing and 800,000 having been restrained?

2        MR. ROTHFARB:  Is that addressed to me, Judge?

3        THE COURT:  Or whoever would be the more appropriate.

4   I suppose you.

5        MR. ROTHFARB:  First of all, the amount of

6   Mr. Rothfarb's judgment is, with post-judgment interest, in the

7   amount of approximately $50.  The judgment is worth just under

8   500,000.

9        On top of it, pursuant to Debtor Creditor Law 273-A,

10  Mr. Rothfarb has a right to seek attorney's fees incurred in

11  pursuing fraudulently conveyed assets.

12        Even moreover, Mr. Shannon, correctly, has a right to

13  seek funds from the stake to reimburse Fidelity for its

14  attorney's fees incurred in this proceeding.

15        MR. SHANNON:  Your Honor, this is Michael Shannon.  If

16  I could just throw our two cents in on that?

17        THE COURT:  Sure.

18        MR. SHANNON:  The New York law provides that in the

19  case of a restraining notice, the garnishee can restrain twice

20  the amount of the amount of the judgment.  So what we have here

21  is a situation where it was up in the neighborhood of, with the

22  interest that Mr. Rothfarb was asserting, of $800,000 or so.

23        And I did communicate to the competing interests that

24  I encouraged them to do whatever they want and on the excess,

25  if they could calculate any.  And not having a resolution

SPEAKERPHONE CONFERENCE

1  there, we had one account that they were fighting about, and we

2  weren't going to cut it up, which is why we presented the

3  entirety of it to the Court.

4          MR. EISENBERGER:  Your Honor, may I just briefly?

5  This is Sheldon Eisenberger again.

6          THE COURT:  Yes, Mr. Eisenberger.

7          MR. EISENBERGER:  With regard to Mr. Rothfarb, just a

8  couple of comments.

9          On the Rule 22 interpleader, Mr. Rothfarb would have

10  to look to Fidelity's ownership, and they would have to then

11  plead that none of the members of the Fidelity LLC in fact are

12  not New York residents as well.  What happens is you would have

13  to look to Fidelity then.

14          With regard to Mr. Rothfarb's statement of fraudulent

15  conveyance, you need to have an adjudication.  There has not

16  been any adjudication.  We acknowledge that there is a judgment

17  against Mr. Caro.  There has to be a formal state adjudication

18  as to determine whether there was in fact a fraudulent

19  conveyance of any of Mr. Caro's assets into Indii.  There has

20  not been any.

21          With regard to the good faith by the stakeholder,

22  we've contended that there is no good faith basis because it's

23  clear that this is an account belonging to Indii and not to

24  Mr. Caro.

25          With regard to the amounts that are being restrained,

SPEAKERPHONE CONFERENCE

1  Fidelity can't come into this court and say I need to restrain

2  double the amount because I have to cover our legal fees when

3  they're the cause; they're bringing the interpleader.  We're

4  contending that the interpleader is being brought improperly.

5  They can't just have it both ways and then say we've got to

6  restrain double the amount.

7          Again, in order to have any restraint, you have to

8  have a proper restraint.  There is no proper restraint

9  outstanding.  All the restraints that Mr. Rothfarb referred to

10  have all been vacated or voided or are moot.  Therefore,

11  sometime in the middle of September those have all fallen by

12  the wayside because of the exemptions that were filed by

13  Mr. Caro.  There were no objections to those exemptions.  So

14  automatically within a certain period of time, I believe it was

15  September 18th, those restraining notices are all voided.

16          Again, I reiterate that in order to be able to

17  accomplish what Mr. Rothfarb wants to accomplish, he needs to

18  have an adjudication that in fact under the debtor creditor law

19  there was a fraudulent conveyance.  We do not have that.  And,

20  therefore, he and Fidelity can't hide behind an interpleader

21  action and saying, well, we're concerned about these things,

22  when they have not properly followed nor are they entitled to

23  the relief that they're seeking.

24          THE COURT:  Mr. Shannon.

25          MR. SHANNON:  This is Michael Shannon.

SPEAKERPHONE CONFERENCE

1          The adjudication, as I understand it, is supposed to

2     be the second stage of an interpleader.  If there had been an

3     adjudication that Mr. Rothfarb was entitled to the funds or an

4     adjudication that Mr. Caro's funds were not in the Indii

5     account, there wouldn't be a dispute going on

6          THE COURT:  Well, all right.  Let me stop you there.

7          This strikes me as arguing about whether or not I have

8     to make a decision as to whether the funds were ever properly

9     restrained to begin with.  I think that's what Mr. Eisenberger

10    is arguing.  Am I wrong, Mr. Eisenberger?

11         MR. EISENBERGER:  No, your Honor.  I'm arguing

12    different.  I'm arguing -- well, in a way, yes.  I'm arguing

13    that they had no right to restrain the Indii funds.  That is

14    correct.

15         THE COURT:  Right.  OK.

16         MR. SHANNON:  It is Fidelity's position that the

17    restraints are history, not relevant to whether there are today

18    or at the time of the complaint competing claims.

19         MR. EISENBERGER:  There was never a claim.  That's the

20    point, Judge.  That's exactly right.

21         THE COURT:  Well, whatever the basis of the

22    restraint -- and I read your papers on behalf of Mr. Caro, so I

23    don't know whether Fidelity is conceding that those are the

24    facts or not, but it doesn't really matter.  Assuming that

25    they're true, why isn't Mr. Shannon right that we're beyond

SPEAKERPHONE CONFERENCE

1    that now and that there are competing claims here?

2         MR. EISENBERGER:   In order to have a competing claim,

3    you have to start out with the premise that you need to have a

4    legitimate claim.   You have to have competing legitimate

5    claims.   There has been no legitimate claim with regard to the

6    Indii assets.   There has never been.   And nobody has disputed

7    that.   Everybody is agreed that this was an Indii account.

8         MR. SHANNON:   Your Honor, I think that <u>Fidelity China</u>

9    bank case that we cite is right on point that vexatious threats

10   meet the test.   And here the legitimacy of the ultimate

11   transfer question is, as I said, stage two.

12         THE COURT:   Does anyone else have anything they would

13   like to add?

14         MR. EISENBERGER:   I would just like to add that this

15   is possible, your Honor.   Because I do anticipate that whatever

16   happens with regard to your Honor's decision in the

17   interpleader action, this action is not going to go away.   And

18   there is a mechanism, if your Honor could possibly refer this

19   to a magistrate, Mr. Caro would be willing to meet with

20   Mr. Rothfarb and to see if they could come up with a number.

21   Because that's really the underlying issue here, as to what is

22   the proper judgment and what is the exact amount that is owed

23   by Mr. Caro to Mr. Rothfarb.

24         If your Honor would be willing to refer this, and if

25   Mr. Rothfarb would be willing to participate, we would be

SPEAKERPHONE CONFERENCE

1    willing to immediately meet with a magistrate, even this week,

2    if possible.  The reason why I'm suggesting a quick resolution

3    is because we are still going to be waiting for the reply

4    papers from Fidelity.  I don't know if we might ask for a

5    certified -- I know we're not entitled to it, but I have no

6    idea whether Fidelity is going to raise additional issues that

7    they might not have had in their initial papers.  What I think

8    would be helpful is if your Honor maybe could refer this to a

9    magistrate.  Because I think, really, it is going to boil down

10   to how much Mr. Caro owes Mr. Rothfarb, and that's what's

11   really the underlying dispute.

12          THE COURT:  Look, there is no doubt in my mind that if

13   you two could resolve the underlying judgment and payment here,

14   that that would certainly help us.

15          Let me hear from Mr. Rothfarb.

16          MR. ROTHFARB:  Judge, we're willing to go before a

17   federal magistrate and we're willing to entertain offers.

18   However, that is a side issue that does not affect the

19   jurisdiction of this interpleader.

20          THE COURT:  No, I recognize that.

21          MR. ROTHFARB:  One other issue which I do need to

22   bring to the Court's attention and hopefully get some clarity

23   regarding is with regard to the scope of the continuing

24   injunction and its effect on the parallel state proceedings

25   that are going on.

SPEAKERPHONE CONFERENCE

1          Specifically, there are two proceedings, one in New

2     York and in Connecticut, which are now proceeding to

3     post-judgment, including post-judgment discovery.   In

4     connection with those proceedings, we have sought and served

5     subpoenas on Mr. Caro.  We have also served subpoenas on

6     Fidelity.

7          Now, Fidelity at the time of service raised a concern

8     with us, after the subpoenas were objected to by Mr. Caro, that

9     they would run afoul of your temporary restraining order.  And

10    we would like clarification that the injunction does not bar us

11    from prosecuting the state proceedings to the extent they do

12    not affect or otherwise determine the ownership of the funds in

13    the interpleaded stake.  And we would like some clarity

14    regarding whether we can prosecute and seek to compel our

15    discovery demands.

16         THE COURT:  Mr. Shannon.

17         MR. SHANNON:  Yes.  I had indicated to Mr. Rothfarb

18    that we really were hoping that we would be subject to

19    discovery in only one forum.  And while he had served those

20    discovery demands on us, Mr. Caro had objected, saying that he

21    believed that they were violating the state court restraining

22    order.

23         Our concern was primarily that we wanted to be

24    responding to one wave, if you will, of discovery, and we

25    thought it more appropriate that it be in your Honor's court

1    rather than starting off in a state court, which may or may not

2    have been permitted under your order.

3         And I had suggested to Mr. Rothfarb that that we raise

4    it today.  And if the Court had no problem with his proceeding

5    with discovery in this court, fine.  We weren't going to hold

6    him to the full-time allotted to respond to this document

7    request and the like.

8         We did require formal discovery requests because I'm

9    assuming the documents that were being asked for are otherwise

10   private financial records of individuals or companies, but that

11   we thought it appropriate to address --

12        THE COURT:  Hold on.

13        It seems to me that -- yes, I agree with you it was

14   appropriate to address it this afternoon.  The order indicates

15   that the defendants are enjoined from instituting or

16   prosecuting any action against Fidelity, etc., with regard to

17   the account in the name of defendant Indii.Com.  And I just

18   thought I heard Mr. Rothfarb say that that's not what they are

19   discovering in the other two actions, or did I misunderstand

20   you, Mr. Rothfarb?

21        MR. ROTHFARB:  Let me provide a little clarification.

22        The answer is, Judge, it does seek information about

23   those accounts but it seeks information about all of Mr. Caro's

24   accounts, his business and personal.  So, yes, there is a whole

25   lot.  And to make sure we don't have any misunderstanding, I

SPEAKERPHONE CONFERENCE

1   have no problem serving parallel discovery requests in the

2   federal proceeding as long as they are essentially not going to

3   be objected to to the extent they exceed the scope of the

4   interpleader.  We are in sort of a Catch-22 on that point,

5   Judge.

6           Fidelity understandably wants to have a single forum

7   in which they get all their discovery requests, but we're

8   caught between, well, if we go in the federal proceeding only,

9   then we're very limited in scope, whereas if we proceed in

10  state court it's a much wider scope, which we're entitled to

11  under Article 52 of the CPLR.

12          So as long as we're permitted to serve discovery

13  immediately in the federal proceeding and it is not going to be

14  essentially overly limited, we have no problem serving new

15  discovery requests that are properly formated for federal

16  court.

17          MR. SHANNON:  Your Honor, it was my understanding that

18  the thrust -- not the entirety but the thrust of the discovery

19  would be directed to the contents and make up of the Indii

20  account assets and whether they are proof of alter ego or proof

21  of transfers, or whatever, to support Mr. Rothfarb's claim that

22  it's really Caro's money.  And, you know, we don't have a

23  problem addressing discovery requests promptly.  We just were

24  asking what he wanted them for.

25          I would ask, because it was unclear to me, that if

SPEAKERPHONE CONFERENCE

1    your Honor is receptive to the suggestion of referring

2    something to a magistrate, it wasn't clear to me exactly what

3    counsel was asking be sent, whether it was some sort of

4    settlement discussions between Caro and Rothfarb or whether he

5    was asking that there be a hearing of some type or this motion

6    referred.

7            MR. EISENBERGER:  May I interrupt?  This is Sheldon

8    Eisenberger, your Honor.

9            THE COURT:  Sure.  Go ahead.

10           MR. EISENBERGER:  I was only addressing settlement

11   discussions between Caro and Rothfarb.  I was not in any way

12   looking to delay or in any way prevent the resolution of the

13   interpleader action.  To the contrary, I thought I had stated

14   that I would do it quickly only because there is going to be a

15   little delay for Fidelity's reply, and I thought that maybe

16   this could be resolved during that period of time.

17           THE COURT:  All right.  Look, having read Mr. Caro's

18   papers, although you are proposing this, I don't know whether

19   you guys will ever reach a number.

20           I take your request as, since I haven't decided the

21   jurisdictional issue yet, as a request for the use of the good

22   offices of a magistrate judge here, which is fine, to sit down

23   and talk to you two just about settlement on this issue

24   relating to the number of this judgment.  It doesn't at all

25   seem -- it may well impact the ultimate resolution of the

SPEAKERPHONE CONFERENCE

1    entire interpleader action, but at the moment that would be all

2    I thought you were asking for.  And I gather that is all?

3          MR. EISENBERGER:  That is.  That is exactly correct,

4    your Honor.

5          THE COURT:  I want to go back for a minute, though, to

6    these discovery requests.

7          Mr. Rothfarb, what are you doing in Connecticut and

8    what is the other court that you are --

9          MR. ROTHFARB:  It is New York Supreme Court, Judge.

10         THE COURT:  You are back in New York Supreme Court and

11   you are in state court in Connecticut.

12         What have you filed there?

13         MR. ROTHFARB:  OK.  What happened in state court in

14   Connecticut is on March 18, 2010, Mr. Rothfarb domesticated his

15   New York judgment in Connecticut.  Thereafter, on May 5,

16   Mr. Caro moved to set aside the judgment, claiming that, among

17   other things, the judgment was fraudulently obtained.

18         THE COURT:  Right.

19         MR. ROTHFARB:  On September 21st, after a hearing, the

20   Superior Court of Connecticut denied Mr. Caro's motion in its

21   entirety.

22         Now, with regard to what's happening -- and that's all

23   that's gone on in state court so far in Connecticut.

24         THE COURT:  Let me stop you right there.

25         What's going to go on after that?  What is the next

SPEAKERPHONE CONFERENCE

1    event?

2         MR. ROTHFARB:  Well, Mr. Caro's time to appeal in

3    Connecticut has not yet expired, but we plan to use some of the

4    post-judgment devices in Connecticut because we understand,

5    among other things, Mr. Caro is currently a recipient of

6    widower support in Connecticut, and we plan to serve an

7.   execution on the administrator of the estate.

8         THE COURT:  All right.  So you are going after

9    whatever assets of Mr. Caro you can find in Connecticut, is

10   that right?

11        MR. ROTHFARB:  Or New York.  That is correct, Judge.

12        THE COURT:  Hold on.  I am just dealing with

13   Connecticut at the moment.

14        So you are not going to be serving any discovery on

15   Fidelity about that, are you?

16        MR. ROTHFARB:  We have no plans to do so now, Judge.

17   I don't think so.

18        I mean, we are trying to get a full and fair picture

19   of Mr. Caro's financial affairs since the judgment was rendered

20   and find any assets.

21        THE COURT:  Look, are you going to the Connecticut

22   state court and asking for a subpoena for --

23        MR. ROTHFARB:  No, we are not.

24        THE COURT:  -- for Fidelity?

25        MR. ROTHFARB:  No, we are not, Judge.

SPEAKERPHONE CONFERENCE

1          THE COURT:  And can you tell me you are not going to?

2          MR. ROTHFARB:  Yes.

3          THE COURT:  OK.  Now, tell me what's going on in New

4    York.

5          MR. ROTHFARB:  In New York, under the authority of the

6    New York Supreme Court, we served twice, once by mail and once

7    personally, an information subpoena and restraining notice on

8    Mr. Caro.  He has not responded to it.  We would like to move

9    to compel in the state court to get answers to our information

10   subpoena, at a minimum.

11         THE COURT:  OK.

12         MR. ROTHFARB:  And that was done before you entered

13   your order, Judge.

14         THE COURT:  OK.  So there I gather you would serve

15   Fidelity and, among other things, ask them -- which would, you

16   know, literally be a violation of this restraining order -- ask

17   them for information about the Indii account, or am I

18   misunderstanding something?

19         MR. ROTHFARB:  Well, OK.  There are two sets of

20   subpoenas that are outstanding in New York, Judge.  There is

21   one set I've served upon Mr. Caro which does ask about Indii

22   but it is a 60-question information subpoena that asks about

23   residence, employment, etc.  There is a different subpoena

24   served upon Fidelity, which I believe was eight questions, and

25   a subpoena duces tecum served upon Fidelity that more directly

SPEAKERPHONE CONFERENCE

1    relates to the Indii account.

2            THE COURT:  When were those served?

3            MR. ROTHFARB:  Several weeks ago, Judge.

4            THE COURT:  But before the restraining order, right?

5            MR. ROTHFARB:  I believe so.

6            MR. SHANNON:  Your Honor, I believe they were served

7    afterward.

8            MR. ROTHFARB:  Were they?

9            MR. SHANNON:  And, your Honor, at that point we did

10   have discussions about a possible stipulation of moving the

11   discovery to your Honor, or to the federal court case, and then

12   we figured we would raise it today.

13           THE COURT:  All right.  Well, what do you want to do?

14   Can you two agree?  I am not going to decide today on the

15   issues raised.  I am going to wait, Mr. Shannon, for your

16   reply.

17           MR. ROTHFARB:  Your Honor, we would also like to file

18   a reply to Mr. Caro and Indii.Com. Use's papers.

19           THE COURT:  All right.  Mr. Rothfarb, when am I

20   getting these replies?

21           Mr. Eisenberger, how much time do you need?

22           MR. EISENBERGER:  We would like to make -- we would

23   need about two weeks, your Honor.  We would like to make a

24   motion to dismiss.  That is our intention.

25           THE COURT:  So that would be what your reply would be,

SPEAKERPHONE CONFERENCE

1    correct?

2            MR. EISENBERGER:  That is correct, your Honor.

3            THE COURT:  Well, then there is going to be a lot more

4    briefing going on, it sounds like.

5            And, Mr. Shannon, you definitely want a reply,

6    correct?

7            MR. SHANNON:  Yes, your Honor.

8            I was going to respond to what we received last night,

9    but now I assume he is moving on similar grounds for some

10   motion to dismiss.

11           THE COURT:  That's what it sounds like.

12           MR. EISENBERGER:  Yes, there will be similar grounds,

13   your Honor, but we will have a little more meat to it.

14           MR. SHANNON:  And I don't know that --

15           THE COURT:  You would rather wait and oppose the

16   motion to dismiss, is that right, Mr. Shannon?

17           MR. SHANNON:  That's what it sounds like, unless your

18   Honor is going to address the order to show cause issues before

19   the motion to dismiss, in which case we, I guess, would be

20   constrained to brief it perhaps twice.

21           THE COURT:  Yes.

22           MR. SHANNON:  It just seems -- my preference, unless

23   it interferes with the Court's desire to resolve the different

24   motions, my preference would be to put it all in the response

25   to the motion to dismiss, which I assume would be the more

SPEAKERPHONE CONFERENCE

1   fulsome articulation of their argument.

2          THE COURT:  I think it may help, because it's -- well,

3   we have people coming later than others to this case in the

4   sense of having had the opportunity to submit papers.

5          So, all right.  Mr. Eisenberger, you have two weeks,

6   which would mean, I guess, October 18th.

7          MR. EISENBERGER:  Thank you, your Honor.

8          THE COURT:  All right.  And, Mr. Shannon, how much

9   time do you need?

10         MR. SHANNON:  Your Honor, if we could have three

11  weeks, because I will be out of town for several of those days

12  on something else?

13         THE COURT:  Why don't you give me a date?  I don't

14  have a calendar in front of me.  It looks like that would be

15  November 8th.

16         MR. SHANNON:  November 8th sounds right.

17         THE COURT:  Now, what is everyone else doing here?

18  Mr. Rothfarb?

19         MR. ROTHFARB:  I would like to be on the same schedule

20  as Fidelity in responding to the motion to dismiss.

21         THE COURT:  OK.

22         MR. ROTHFARB:  You said November 8th, Judge?

23         THE COURT:  Yes.

24         And Mr. Kaelin?

25         MR. KAELIN:  I don't really need a schedule because I

SPEAKERPHONE CONFERENCE

1  am not going to be filing any motions and I probably will not

2  be responding to any of the motions.  But if I do need to

3  respond, I will just respond in accordance with the applicable

4  rules.

5          THE COURT:  OK.

6          MR. EISENBERGER:  Your Honor, would we be able to have

7  a reply?  We would like to reply.

8          THE COURT:  OK.  One week.

9          MR. EISENBERGER:  One week.

10         THE COURT:  The 15th.

11         MR. EISENBERGER:  Your Honor, is there --

12         THE COURT:  I'm happy to ask a magistrate judge to

13  hold a settlement conference, but it would be, as you are

14  outlining, an effort for Mr. Caro and Mr. Rothfarb to try to

15  work on a number.

16         Mr. Rothfarb, do you think your client is amenable to

17  that?

18         MR. ROTHFARB:  We're somewhat hesitant given the

19  history between these parties, but, I mean, we will engage in

20  good faith in any negotiations.

21         THE COURT:  All right.  Your client, is he in New York

22  or Florida?

23         MR. EISENBERGER:  Is that addressed to Sheldon

24  Eisenberger, your Honor?

25         THE COURT:  No.  I'm sorry.  I was actually talking

SPEAKERPHONE CONFERENCE

1    about Mr. Rothfarb.

2          Are the clients going to be able to and want to come

3    to New York for the --

4          MR. ROTHFARB:  My client is a resident of New York,

5    Judge.

6          THE COURT:  Right.

7          MR. EISENBERGER:  My client, Mr. Caro, will also be

8    able to come.

9          THE COURT:  Let me see who the magistrate is and I

10   will ask him to set up a settlement conference for you

11   gentlemen pre my decision with respect to jurisdiction.

12          With respect to this discovery issue, Mr. Shannon,

13   your preference is that all the discovery be asked for in the

14   federal action so you only have to respond once?  And you want

15   a stay of all the proceedings in Connecticut?

16          MR. SHANNON:  I wasn't -- we are not a party to the

17   proceedings in Connecticut, and I take no position on ongoing

18   unrelated or --

19          THE COURT:  All right.  Connecticut, you are right,

20   Connecticut I think we figured out as unrelated.  So we are

21   talking about New York State Supreme Court.

22          MR. SHANNON:  All I was asking was that I just get

23   discovery requests in one forum, being this one.  I am not

24   seeking to add any broader stay that doesn't affect --

25          THE COURT:  You know what, honestly, and please tell

SPEAKERPHONE CONFERENCE

1    me if I'm wrong about this, I think I'd like to see the New

2    York State Supreme Court action move.

3            Mr. Rothfarb, that is an action where you are trying

4    to get a determination, correct, with respect to Mr. Caro's

5    interests?

6            MR. SHANNON:  Your Honor, if I could interject?

7            One reason that the Court dissolved these stays that

8    the New York State court had originally issued a restraining

9    order on an order to show cause for Mr. Rothfarb was, to use

10   the Court's words, I'm not going to be a Band-Aid while this is

11   going to be decided ultimately in the interpleader.

12           THE COURT:  Well, I have no idea what happened in New

13   York State Supreme Court, I must say.  I was under the

14   impression that there was a restraining order and that there

15   had been some finding with respect to that restraining order.

16   Be that as it may.

17           So what action is there in New York State Supreme

18   Court, then?

19           MR. SHANNON:  There is a case pending but I am not

20   aware of any applications by anybody.

21           THE COURT:  Mr. Rothfarb?

22           MR. ROTHFARB:  Judge, I'm sorry.  You have been

23   cutting in and out so I'm not sure what the question was.

24           THE COURT:  What exactly -- tell me again what you are

25   doing.  You've instituted a new lawsuit in New York State?

SPEAKERPHONE CONFERENCE

1          MR. ROTHFARB:  No, we have not, Judge.  The lawsuit in

2    New York State is the original lawsuit resulting in the

3    judgment, and that's been definitively decided on the merits

4    back in 1995.

5          What is happening in the New York State court is,

6    pursuant to Article 52 of the CPLR, certain post-judgment

7    discovery is being sought.

8          THE COURT:  Well, are there any other assets, or you

9    don't know, that you are going after other than this Fidelity

10   account?

11         MR. ROTHFARB:  We would love to go after all his

12   assets, Judge, but he has not responded to our discovery, and

13   under your order there was reasonable construction that we were

14   prohibited from compelling him to produce discovery.

15         THE COURT:  All right.  I am going to follow the

16   literal terms of the order, and then will decide first here

17   whether or not I have jurisdiction.  If I do, then we'll have

18   an orderly process where, assuming that your two clients,

19   Mr. Rothfarb and Mr. Caro, can't resolve this, which in itself

20   may resolve the interpleader action as well, we'll either do it

21   here if I have jurisdiction, or if I don't have jurisdiction,

22   it will all go back to New York State Supreme Court.

23         In the meantime, you are restrained -- OK? -- as the

24   order says.

25         MR. EISENBERGER:  This is Sheldon Eisenberger, your

SPEAKERPHONE CONFERENCE

1    Honor.

2            Has your Honor determined what magistrate you are

3    going to be referring this to?

4            THE COURT:  I have to look on the docket.  There will

5    be an assigned magistrate.  If you give me a minute, we will

6    check the docket.

7            MR. ROTHFARB:  Judge.

8            THE COURT:  Yes.  Who is that?

9            MR. ROTHFARB:  This is Evan Rothfarb, Judge.

10           THE COURT:  You can secede and go after anything but

11   not this account.  Those are the words of the order.

12           MR. ROTHFARB:  OK.  So I was just concerned to the

13   extent that the order does not restrain our post-judgment

14   procedures to the extent we go after property that is outside

15   the scope of the interpleader.

16           THE COURT:  Yes.  The interpleader is only talking

17   about the Indii account.  So that's all --

18           MR. ROTHFARB:  OK.  That's all we wanted, Judge.

19           THE COURT:  OK.  Apparently, this has been assigned to

20   Judge Ellis but I haven't referred it yet.  I will talk to

21   Judge Ellis and I'll refer it, and I'll let you know by fax

22   that an order of referral has been done.  And I'll give you his

23   contact information.  You can call him and ask him to set up a

24   settlement conference.

25           It will be referred just for settlement.  OK?

SPEAKERPHONE CONFERENCE

1          MR. ROTHFARB:  Thank you, your Honor.

2          THE COURT:  All right.  Thank you, everybody.

3          ALL COUNSEL:  Thank you, your Honor.

4          (Call disconnected)

5                              -   -   -

# Exhibit 3

Page 1

STATE OF CONNECTICUT:   COURT OF PROBATE

DISTRICT OF GREENWICH

DISTRICT NO. 057

------------------------------x
                              :
                              :
                              :
ESTATE OF ELIZABETH ANNE CARO : (08-0082)
                              :
                              :
                              :
------------------------------x


          Deposition of MARSHALL CARO, taken pursuant

     to General Statutes Section 52-148a and the

     Connecticut Rules of Practice, held at the law

     offices of Day Pitney, LLP, One Canterbury

     Green, Stamord, Connecticut, before Rosanne

     Morgillo, a Notary Public in and for the State

     of Connecticut, on Tuesday, November 25, 2008,

     at 10:35 P.M.

ESTATE OF ELIZABETH ANNE CARO

November 25, 2008

2 (Pages 2 to 5)



**Page 2**

1  A P P E A R A N C E S :
2
3      ATTORNEY FOR MARSHALL CARO:
4      MARK F. KATZ, ESQUIRE
5      196 North Street
       Stamford, Connecticut
6
7      ATTORNEY FOR DAVID and ERIC WEINTRAUB
8      DAY PITNEY, LLP
       One Audubon Street
9      New Haven, Connecticut
       BY: PETER K. RYDEL, ESQUIRE
10
11     ATTORNEY FOR ESTATE:
12     FERGUSON, AUFSESSER, HALLOWELL & WRYNN
       66 Field Point Road
13     Greenwich, Connecticut 06830
       BY: JOHN MEERBERGEN, ESQUIRE
14
15
16
17
       ALSO PRESENT: Nicole DiGiorgi Chavez
18
19
20
21
22
23
24
25

**Page 3**

1          S T I P U L A T I O N S
2
3      IT IS HEREBY STIPULATED AND AGREED by and
4  between counsel for the respective parties hereto
5  that all technicalities as to proof of the official
6  character before whom the deposition is to be taken
7  are waived.
8      IT IS FURTHER STIPULATED AND AGREED by and
9  between counsel for the respective parties hereto
10 that the reading and signing of the deposition by
11 the deponent are not waived.
12     IT IS FURTHER STIPULATED AND AGREED by and
13 between counsel for the respective parties hereto
14 that all objections, except as to form, are reserved
15 to the time of trial.
16
17              * * * * *
18
19
20
21
22
23
24
25

**Page 4**

1      M A R S H A L L    C A R O ,
2  having been first duly sworn by Rosanne Morgillo, a
3  Notary Public in and for the State of Connecticut,
4  testified on his oath as follows:
5  DIRECT EXAMINATION
6  BY MR. RYDEL:
7      Q    Good morning, Mr. Caro.  My name is Peter
8  Rydel.  I'm an attorney with the law firm of Day
9  Pitney here in Stamford, Connecticut.  I represent
10 David and Eric Weintraub, as you probably know, who
11 I'll refer to today as "The Weintraubs," or "The
12 boys."  So if I say "The boys" or "The Weintraubs,"
13 I'm referring to David and Eric together.
14          Have you ever been deposed before?
15     A    Yes.
16     Q    When were you deposed?
17     A    I don't recall specifically.
18     Q    In the last five years?
19     A    I don't recall specifically.
20     Q    In the last ten years?
21     A    Probably.
22     Q    Was the deposition in a civil matter,
23 civil lawsuit?
24     A    Yes.
25     Q    Where was the civil lawsuit?  Was it in

**Page 5**

1  the State of Connecticut?
2      A    No.
3      Q    Was it in the State of New York?
4      A    I believe so.
5      Q    Was it a deposition in which you were a
6  party?
7      A    No.
8      Q    No?  You were a third party?
9      A    I don't know what that means.
10     Q    Were you a plaintiff or a defendant in
11 the matter in which you were deposed?
12     A    No.
13     Q    So you were not a party to the case then.
14     A    If that's what that means, no.
15     Q    You've been deposed once?  Twice?  You
16 don't recall how many times?
17     A    I believe I was deposed once.
18     Q    Have you ever testified at trial before,
19 at a civil trial?
20     A    Yes.
21     Q    Were you a party to the matter in which
22 you testified?
23     A    No.
24     Q    Have you ever been a plaintiff or a
25 defendant in any case before?

ESTATE OF ELIZABETH ANNE CARO                                        November 25, 2008

## Page 22

1    Q    Is that the extent of your formal
2 education?
3    A    As far as I can recall, yes.
4    Q    As far as degrees and those kinds of
5 things are concerned?
6    A    That's my understanding.
7    Q    Do you have any professional licenses or
8 certificates at all, any kind of thing of that
9 nature?
10    A    I don't believe so.
11    Q    No like Series 7 or anything like that?
12    A    Not that I can recall.
13    Q    What is your profession or trade, Mr.
14 Caro? How would you describe that to somebody?
15    A    I'm a businessman.
16    Q    What kind of business are you in or do
17 you do?
18    A    I'm involved in a messaging company.
19    Q    What's the name of the messaging company?
20    A    Indii.com, L.L.C. -- USE, L.L.C.
21    Q    How are you involved in Indii.com?
22    A    I am the president.
23    Q    It's an internet company, I'm assuming.
24    A    Yes.
25    Q    Who else is involved in Indii.com? How

## Page 23

1 many employees does Indii.com have?
2    A    We have one full-time and three part-time
3 employees.
4    Q    Does it have offices somewhere?
5    A    I run it from my home.
6    Q    Who are the employees of Indii.com?
7    A    Peter Wheelan, W-H-E-E-L-A-N; Eugene
8 Feldman; and Robert O'Neill, O apostrophe N-E-I-L-L;
9 and Anthony Sabatini.
10    Q    What does Indii.com do?
11    A    We carry messages from broker dealers to
12 buy-side firms.
13    Q    Do you earn any income from Indii.com?
14    A    No.
15    Q    Does Indii.com generate any income?
16    A    We generate revenues.
17    Q    Excuse me, revenues.
18    A    But we run at a loss.
19    Q    Do you have an accountant that does the
20 accounting, tax returns for Indii.com?
21    A    Yes.
22    Q    Who is that?
23    A    Karine, K-A-R-I-N-E, Larson, L-A-R-S-O-N.
24    Q    Where is she located?
25    A    Rye Brook.

## Page 24

1    Q    Rye Brook?
2    A    Yes.
3    Q    How long have you been operating
4 Indii.com?
5    A    I believe since 2005.
6    Q    Have you always been operating at a loss,
7 or have you ever generated a profit from --
8    A    We've never made money.
9    Q    Can you explain why; why not?
10    A    Because we haven't been successful.
11    Q    The three or four employees you described
12 earlier, they don't work out of your house, right,
13 or the house you live in? They work someplace else?
14    A    They work from their homes.
15    Q    From their homes, okay. Aside from
16 Indii.com, do you have any other business interests
17 at all in which you're presently engaged?
18    A    I don't believe so.
19    Q    Before you began operating Indii.com --
20 let me ask you this first, sir, are there any other
21 officers, directors, anyone else involved, owners of
22 Indii.com at all besides yourself?
23    A    Yes.
24    Q    Can you give me the names of those
25 people?

## Page 25

1    A    Walter Raquet, R-A-Q-U-E-T, is a minority
2 owner.
3    Q    What is his interest in the company?
4    A    Something on the order of 30 percent.
5    Q    What is your interest in the company?
6    A    60 something percent.
7    Q    Is he the only other shareholder or owner
8 of the company?
9    A    Knight Securities has an interest, which
10 I think is two percent.
11    Q    Is Indii.com a corporation?
12    A    No.
13    Q    What kind of organization is it?
14    A    Limited liability company.
15    Q    What state's laws is it organized under?
16    A    Delaware.
17    Q    Any other owners at all or anyone else
18 with an ownership stake in the company besides the
19 individuals and entities you just described?
20    A    No.
21    Q    Before you began operating Indii.com,
22 what did you do to -- what did you do?
23    A    I operated a company called Indii, which
24 was a new Jersey corporation.
25    Q    Can you spell that for us?

ESTATE OF ELIZABETH ANNE CARO

November 25, 2008

9  (Pages 30 to 33)

| Page 30 |
|---|
| 1  that property? |
| 2      A    I think my net capital contribution is |
| 3  about 87 percent. |
| 4      Q    Do you own any vehicles or have title in |
| 5  your name? |
| 6      A    Yes. |
| 7      Q    What vehicles do you own? |
| 8      A    I own a 2005 Chrysler Pacifica and a 1979 |
| 9  Datsun 280ZX and I have a 60 percent interest, I |
| 10  think, thereabouts, in a 2001 Hyundai XG-300. |
| 11          MR. MEERBERGEN:  What was that |
| 12      again, 2001 Hyundai? |
| 13          THE WITNESS:  Yes. |
| 14  BY MR. RYDEL: |
| 15      Q    The Chrysler Pacifica is in your name? |
| 16      A    Yes. |
| 17      Q    The 1979 Datsun title is in your name? |
| 18      A    Yes. |
| 19      Q    The Hyundai title is -- is the title in |
| 20  your name? |
| 21      A    No. |
| 22      Q    Whose name is the title in? |
| 23      A    Elizabeth Caro, I think. |
| 24      Q    What is the basis for your claim that you |
| 25  have a 60 percent interest in that vehicle? |

| Page 31 |
|---|
| 1      A    Partnership. I contributed that much |
| 2  capital to the purchase of it. |
| 3      Q    Do you have any documents at all that |
| 4  support your claim that you contributed capital to |
| 5  the purchase of the Hyundai? |
| 6      A    Yes. |
| 7      Q    What documents do you have? |
| 8      A    I have a Bill of Sale, I have canceled |
| 9  checks. |
| 10      Q    Did you bring any of that information |
| 11  with you today? |
| 12      A    I don't believe that was in your document |
| 13  request. |
| 14      Q    What bank accounts do you have, Mr. Caro? |
| 15  Can you give me the names of banks in which you |
| 16  maintain bank accounts in your personal name? |
| 17      A    I think it's just Wachovia. |
| 18      Q    How many accounts do you have at |
| 19  Wachovia? |
| 20      A    I think I have three. |
| 21      Q    What kind of accounts are they?  Do you |
| 22  have a checking account there? |
| 23      A    Yes. I think I have two checking |
| 24  accounts and a money market fund. |
| 25          MR. MEERBERGEN:  What? |

| Page 32 |
|---|
| 1          THE WITNESS:  Money market fund. |
| 2  BY MR. RYDEL: |
| 3      Q    Are these accounts that you had while you |
| 4  and Elizabeth were married? |
| 5      A    Yes. |
| 6      Q    Are they accounts that you had before you |
| 7  and Elizabeth were married? |
| 8      A    No. |
| 9      Q    No? |
| 10      A    No. |
| 11      Q    So they were opened during the term of |
| 12  your marriage to Elizabeth? |
| 13      A    Let me clarify that. I don't know when I |
| 14  switched from Citibank to Wachovia. So it may have |
| 15  been when Elizabeth and I were living together. |
| 16      Q    Before you were married. |
| 17      A    Yes. |
| 18      Q    Do you have any investment accounts at |
| 19  all in your name? |
| 20      A    Yes. |
| 21      Q    Where are the investment accounts held? |
| 22      A    I have an account with T.D. Waterhouse, I |
| 23  have an account with Fidelity Investments, and I |
| 24  have an account with my mother at Merrill Lynch. |
| 25      Q    Any other investment accounts at all? |

| Page 33 |
|---|
| 1      A    Not that I'm aware of. |
| 2      Q    Do you own any stock in any corporations |
| 3  outside your investment accounts? |
| 4      A    I don't believe so. |
| 5      Q    Do you own any valuable coins, stamps, |
| 6  anything of that nature? |
| 7      A    I don't believe so. |
| 8      Q    Do you have any other assets, Mr. Caro, |
| 9  aside from the assets that you have just described? |
| 10      A    Yes. |
| 11      Q    What are those? |
| 12      A    I have personal effects. |
| 13      Q    Do you own any expensive or valuable |
| 14  furniture? |
| 15      A    I don't believe so. |
| 16      Q    Do you own any -- aside from your claim |
| 17  to the home at 47 Angelus Drive, do you have any |
| 18  other interests in real property? |
| 19      A    I don't believe so. |
| 20      Q    Do you have any other -- do you have any |
| 21  partnership interests at all in businesses aside |
| 22  from Indii.com? |
| 23      A    I don't believe so. |
| 24      Q    Can you give me a rough or an |
| 25  approximate, rather, balance of your Wachovia |

ESTATE OF ELIZABETH ANNE CARO

November 25, 2008

10  (Pages 34 to 37)

---

**Page 34**

1  accounts?
2      A   I believe it's under $10,000.
3      Q   Under $10,000 total in your two checking
4  accounts and your money market fund?
5      A   I believe so.  In that vicinity.
6  Certainly under 15,000.
7      Q   Do you know the balance of your T.D.
8  Waterhouse account?
9      A   I'm hoping it's not under water.  No, I
10  don't.
11      Q   Is it under a hundred thousand dollars?
12      A   I would be all but certain of that, yes.
13  We've had quite a market reversal.
14      Q   Under $50,000?
15      A   I'm not sure.
16      Q   So it could be between 50 and 100; it
17  could be under 50.
18      A   I don't think it's under 50, but I'm
19  pretty sure it's under 100.
20      Q   Somewhere between -- less than $75,000?
21      A   I don't know.
22      Q   Between 50 and 100 is a rough estimate of
23  where you think that account balance is today.
24      A   That's correct.
25      Q   Okay.  How about your Fidelity account?

---

**Page 35**

1  Do you approximately know what the balance of that
2  account is?
3      A   Probably about 150,000.
4      Q   How about your Merrill Lynch account with
5  your mother?
6      A   Probably down to about 50,000.
7      Q   You said it's with your mother.  Is it a
8  joint account with you and your mom?
9      A   She set it up.  It's money that she put
10  away for me.  It's really her money, but it will
11  pass to me when she passes.  But I think my name is
12  on the account as well.
13      Q   You think your name is on the account as
14  well?
15      A   Yes.
16      Q   Are you receiving any payments, periodic
17  payments at all from any of the investment accounts
18  you described?
19      A   No.
20      Q   Any dividend payments?
21      A   I take it back.  I believe some of the
22  stocks are dividend stocks, but I don't receive the
23  money; everything goes into the account.
24      Q   Drip accounts or reinvestment?
25      A   I'm not sure if they're reinvestment, but

---

**Page 36**

1  I don't take any money out of these accounts when
2  dividends come in.  They just go into the accounts.
3      Q   Do you have any retirement accounts at
4  all in your name?
5      A   I don't believe so.
6      Q   You don't believe so?
7      A   I take it back.  I believe I have a
8  simple retirement account, Simple Keough, I forget
9  the exact terminology, which has got about $12,000
10  in it.
11      Q   Do you know where that's held?
12      A   Citibank or Smith Barney, whatever it is.
13  I think it's Citibank.
14      Q   Any other retirement accounts in your
15  name?
16      A   None that I'm aware of.
17      Q   Are you receiving any distributions from
18  anyone else's retirement accounts right now?
19      A   No.
20      Q   Have you received any distributions from
21  anyone else's retirement accounts?
22      A   Not that I'm aware of.
23      Q   Do you have any CDs at all?
24      A   No.
25          MR. MEERBERGEN:  Can we take a

---

**Page 37**

1      break?
2          MR. RYDEL:  Sure.
3          (R E C E S S)
4  BY MR. RYDEL:
5      Q   Mr. Caro, before we broke, we were
6  talking about your assets.  I'd like to talk about
7  your liabilities now, your personal liabilities.  Do
8  you have any judgments against you today?
9      A   I'm not sure.
10      Q   You're not sure.  Do you know whether
11  anyone has ever obtained a judgment against you?
12      A   I'm not sure.
13      Q   Have you ever been a defendant in an
14  action in which a party has obtained a judgment
15  against you?
16      A   I'm not sure.
17      Q   Do you have any credit card debt?
18      A   I don't believe so.
19      Q   Do you have any credit cards?
20      A   Yes, I do.
21      Q   What credit cards do you have that are in
22  your name?
23      A   I have an American Express, I have one or
24  more Visa cards, one or more MasterCards.
25      Q   One or more Visa cards and one or more

---

ESTATE OF ELIZABETH ANNE CARO                                    November 25, 2008

11 (Pages 38 to 41)

---

Page 38

```
 1   MasterCards, you said?
 2     A   Yes.
 3     Q   Are you carrying balances on any of those
 4   cards?
 5     A   No.
 6     Q   Do you use them regularly to purchase
 7   anything?
 8     A   I use them.  I make purchases through
 9   them.
10     Q   Do you pay the balances off monthly?
11     A   Yes.
12     Q   Where do you obtain -- where does the
13   money come from to pay the balances off?
14     A   From my checking account.
15     Q   At Wachovia?
16     A   Yes.
17     Q   What other debts do you have, or what
18   debts do you have aside from monthly credit card
19   statements, essentially?
20     A   I may have a judgment against me, I'm not
21   sure, which, you know, would be significant.  This
22   is what Attorney Dowd claimed, as I recall, at the
23   hearing, which would probably make my net worth
24   negative, depending upon what I get out of the
25   house.
```

---

Page 39

```
 1     Q   What did Attorney Dowd claim at the
 2   Probate Court hearing?
 3     A   Well, he claimed that there was a
 4   judgment against me in New York dating back from the
 5   early '90s or late '80s.
 6     Q   You don't recall that at all?  You don't
 7   recall that judgment at all?
 8     A   I do not recall the judgment, no.
 9         MR. RYDEL:  Mark this 2.
10         (EXHIBIT 2 Received and Marked.)
11   BY MR. RYDEL:
12     Q   I've put before you, Mr. Caro, Exhibit 2,
13   and I ask you to look at that and then look up when
14   you're done looking at it.
15         Do you recognize this document at all?
16     A   I believe it is what Attorney Dowd
17   produced either at the hearing or subsequent to the
18   hearing in Judge Hopper's court.
19     Q   Did you ever see this document before
20   Attorney Dowd produced it at the Probate Court
21   hearing?
22     A   I don't know.
23     Q   Do you recall being sued by Bill
24   Rothfarb?
25     A   Yes.
```

---

Page 40

```
 1     Q   Who is Bill Rothfarb?
 2     A   Bill Rothfarb is a person who at one time
 3   worked for a company that I was a principal in, in
 4   New York.  The company was, I think, Programit, Inc.
 5   Yes, it was Programit, Inc.
 6     Q   Why did Bill Rothfarb sue you?
 7     A   You'd have to ask Bill Rothfarb.
 8     Q   Do you recall the nature of his claims?
 9     A   No, I do not.
10     Q   What was Programit?
11     A   Programit was a software development
12   company that I owned.  I'm not sure if I owned all
13   of it.  Over 90 percent of it.  That was in business
14   in the late '80s in New York City.
15     Q   Would you agree that this document is a
16   Judgment and Order entered by the Supreme Court,
17   State of New York in or around 1987 -- I'm sorry,
18   1993?
19     A   I would not.
20     Q   Have you ever paid this judgment at all?
21     A   I have not.
22     Q   Has anyone ever contacted you about
23   seeking to collect this judgment?
24     A   Not that I'm aware of.
25     Q   Any other debts that you have, Mr. Caro,
```

---

Page 41

```
 1   that you're aware of?
 2     A   There's a significant mortgage on the
 3   house, about three-quarters of a million dollars.
 4         MR. MEERBERGEN:  I didn't hear the
 5         last part of that answer.  Can you read
 6         it back to me?
 7         (THE REPORTER READ THE RECORD.)
 8   BY MR. RYDEL:
 9     Q   Have you ever attempted to conceal assets
10   from any creditors, Mr. Caro?
11     A   Not that I'm aware of.
12     Q   Can you describe for me what bank
13   accounts Elizabeth Caro had while you were -- while
14   you and she were married?
15     A   I believe she had a couple of bank
16   accounts, one or more investment accounts at
17   Wachovia.
18     Q   When you say "bank accounts" you mean
19   checking accounts and savings accounts?
20     A   I think she had the same type of
21   structure that I did with checking and money market
22   accounts.  And we had a joint account, the two of
23   us, at Wachovia.
24     Q   I'll get to that.
25         Did you know Elizabeth's PIN numbers or
```

---

# Exhibit 4



# The Commonwealth of Massachusetts
# William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

## FIDELITY GLOBAL BROKERAGE GROUP, INC. Summary Screen

Help with this form

[ Request a Certificate ]

**The exact name of the Domestic Profit Corporation:** FIDELITY GLOBAL BROKERAGE GROUP, INC.

**The name was changed from:** FIDELITY INVESTMENTS UK, INC. on 1/3/1996

**Entity Type:** Domestic Profit Corporation

**Identification Number:** 043257666

**Old Federal Employer Identification Number (Old FEIN):** 000483660

**Date of Organization in Massachusetts:** 12/08/1994

**Current Fiscal Month / Day:** 12 / 31       **Previous Fiscal Month / Day:** 00 / 00

**The location of its principal office:**
No. and Street:     82 DEVONSHIRE ST.
City or Town:     BOSTON     State: MA     Zip: 02109     Country: USA

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street:
City or Town:     State:     Zip:     Country:

**Name and address of the Registered Agent:**
Name:     DIANE BROWN
No. and Street:     82 DEVONSHIRE STREET
                    MAILZONE F6B
City or Town:     BOSTON     State: MA     Zip: 02109     Country: USA

**The officers and all of the directors of the corporation:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| PRESIDENT | RODGER A LAWSON | 82 DEVONSHIRE STREET<br>BOSTON, MA 02109 USA |
| TREASURER | TAMI R RASH | 82 DEVONSHIRE ST.<br>BOSTON, MA 02109 USA |
| SECRETARY | VACANT TO BE FILLED | 82 DEVONSHIRE ST.<br>BOSTON, MA 02109 USA |
| ASSISTANT SECRETARY | PETER D. STAHL | 82 DEVONSHIRE ST.<br>BOSTON, MA 02109 USA |
| DIRECTOR | GERARD MCGRAW | 82 DEVONSHIRE ST.<br>BOSTON, MA 02109 USA |

| DIRECTOR | RODGER A LAWSON | 82 DEVONSHIRE ST.<br>BOSTON, MA 02109 USA |
|---|---|---|

**business entity stock is publicly traded:** __

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

| Class of Stock | Par Value Per Share<br>Enter **0** if no Par | Total Authorized by Articles<br>of Organization or Amendments<br>*Num of Shares      Total Par Value* | Total Issued<br>and Outstanding<br>*Num of Shares* |
|---|---|---|---|
| No Stock Information available online. Prior to August 27, 2001, records can be obtained on microfilm. | | | |

| | | | |
|---|---|---|---|
| __ Consent | __ Manufacturer | __ Confidential Data | __ Does Not Require Annual Report |
| __ Partnership | __ Resident Agent | __ For Profit | __ Merger Allowed |

**Select a type of filing from below to view this business entity filings:**

ALL FILINGS
Administrative Dissolution
Annual Report
Application For Revival
Articles of Amendment

[ View Filings ]   [ New Search ]

| Comments |
|---|
| |

© 2001 - 2010 Commonwealth of Massachusetts
All Rights Reserved

[?]
Help

11/8/2010 8:17 AM

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on the 8th day of November, 2010, a true and correct copy of the (i) Memorandum of Law of Plaintiff Fidelity Brokerage Services LLC in Further Support of Its Motion for Interpleader and Related Relief and in Opposition to Defendants Marshall Caro and Indii.com USE LLC's Motion to Dismiss and the (ii) Affidavit of Michael G. Shannon in Further Support of Fidelity's Motion for Interpleader and Related Relief and in Opposition to Caro Defendants' Motion to Dismiss was served via the Court's Electronic Filing  system on the parties below:

Evan Stone Rothfarb, *Counsel for defendant Bill Rothfarb*, (evan.rothfarb@rothfarblaw.com)

Michael P. Kaelin, *Counsel for defendant Walter Raquet* (mkaelin@cl-law.com, dsantos@cl-law.com)

Sheldon Eisenberger, *Counsel for defendants Marshall Caro & INDII.com USE LLC* (sheldon@eisenbergerlaw.com), (jacobz@eisenbergerlaw.com), (lchabus@eisenbergerlaw.com)

Michael D. Hoenig